UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 10-45599 |
| KHALIL H. HARAJLI, | Chapter 7 |
|         Debtor. | Judge Thomas J. Tucker |
| _____/ | |
| MARK H. SHAPIRO, Trustee, | |
|         Plaintiff, | |
| v. | Adv. Pro. No. 11-4651 |
| SIHAM HARAJLI, | |
|         Defendant. | |
| _____/ | |

**OPINION REGARDING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

In this adversary proceeding, the Chapter 7 Trustee filed a complaint seeking to recover $119,000.00 from Debtor's ex-wife ("Defendant") under 11 U.S.C. § 542.[1] This amount represents one-half of the $238,000.00 in total cash advances that Defendant obtained, before Debtor's bankruptcy, on a Comerica Bank line of credit. Debtor and Defendant were jointly liable on that line of credit, and it is secured by the home that Defendant was awarded under the 2004 judgment of divorce entered between Debtor and Defendant. The Trustee's complaint alleges that the $119,000.00 is "property of the estate" either under the "community property" provisions of 11 U.S.C. § 541(a)(2), or under 11 U.S.C. § 541(a)(1), and thus recoverable under the turnover provisions of 11 U.S.C. § 542.[2]

---

[1] Compl. (Docket # 1) at 3.

[2] *See* Compl. (Docket # 1 at 3 ¶¶ 23-24).

The parties each filed motions for summary judgment.[3] The Court held a hearing on the motions and took them under advisement. The Court concludes that: (1) the Trustee's "community property" theory under 11 U.S.C. § 541(a)(2) fails; and (2) the Debtor never had any legal or equitable interest under 11 U.S.C. § 541(a)(1) in any portion of the cash advance proceeds that Defendant obtained on the line of credit. As a result, no portion of the cash advance proceeds were ever property of the bankruptcy estate. For these reasons, Defendant is entitled to summary judgment.

**I. Facts**

The following facts are undisputed. In 2003, while Defendant and Debtor were still married, they jointly obtained a line of credit from Comerica Bank with a limit of $238,000.00, which was secured by a mortgage on the marital home. On September 14, 2004, a default judgment of divorce ("Divorce Judgment") was entered between Defendant and Debtor.[4] The Divorce Judgment awarded Defendant the marital home "as her sole property" and provided that Defendant was to "hold [Debtor] harmless for same."[5] The Divorce Judgment said nothing about the Comerica Bank line of credit.

The line of credit was not modified or terminated during the parties' divorce. Almost five yars later, on March 11, 2009, Defendant made a $225,000.00 draw on the line of credit.[6] Then on June 3, 2009, Defendant made a $13,000.00 draw on the line of credit, bringing the total

---

[3] Docket ## 15, 19.

[4] *See* Divorce Judgment (Ex. 1 of Compl. (Docket # 1)).

[5] *Id.* at 4.

[6] Ex. 2 of Compl. (Docket # 1) at pdf. p. 10.

2

amount of cash advances Defendant obtained up to the $238,000.00 limit.[7] These advances encumbered Defendant's home under Comerica Bank's mortgage, which was the only mortgage or lien on Defendant's home.

Debtor, by contrast, never made any draws on the line of credit, and did not receive any of the $238,000.00 in proceeds that Defendant borrowed.

On February 25, 2010, Debtor filed a voluntary petition for relief under Chapter 7. On Schedule F, Debtor listed an unsecured claim of Comerica Bank in the amount of $238,138.00, based on Debtor's joint liability with the Defendant on the line of credit.[8] On the date Debtor filed his Chapter 7 petition, Defendant still had at least $225,127.55 of the $238,000.00 in cash advance proceeds.[9]

On July 2, 2010, Debtor obtained a discharge of his debts under 11 U.S.C. § 727. Debtor's debt to Comerica Bank, based on the line of credit, was discharged.

## II. Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

## III. Discussion

### A. The parties' positions

---

[7] *See* Ex. 3 of Compl. (Docket # 1) at pdf. p. 11.

[8] Docket # 13 in main bankruptcy case (Case No. 10-45599) at 12.

[9] *See* Ex. 3 of Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J. (Docket # 15).

The Trustee seeks summary judgment in the amount of $112,563.76.[10] The Trustee argues that "under Bankruptcy Code § 541, half of the $225,127.55 ($112,563.76) represents property of the bankruptcy estate . . . as community property [under § 541(a)(2)]"; as an equitable right under § 541(a)(1); "or on equitable grounds."[11] The only alleged "equitable ground" the Trustee has asserted, as a basis for recovering half of the cash advance proceeds, is a theory of unjust enrichment.[12] And, Trustee says, because the $112,563.76 is property of the bankruptcy estate, Defendant must turn it over under § 542.[13]

The Trustee's primary argument is that Debtor's unused contractual right to draw on the line of credit survived the divorce between Debtor and Defendant; that it was the Debtor's "property;" and that the draws Defendant took from the line of credit were proceeds of that property. As a result, says the Trustee, one-half of the cash proceeds remaining as of the petition date, from the Defendant's draws on the line of credit, became property of the Debtor's bankruptcy estate.

Defendant argues that the line of credit was not "community property," within the meaning of § 541(a)(2).[14] Defendant argues further that the line of credit, and its proceeds, were not property of the Debtor, so the proceeds of Defendant's draws on the line of credit were not

---

[10] Pl.'s Mot. for Summ. J. (Docket # 15) at 4.

[11] *Id.* at 4; Pl.'s Br. In Supp. of Mot. for Summ. J. (Docket # 15) at 5.

[12] *See* Pl.'s Combined Resp. to Def.'s Mot. for Summ. J. and Reply in Supp. of Pl.'s Mot. for Summ. J. (Docket # 27, "Plaintiff's Reply") at 1, 5.

[13] *Id.*

[14] Def.'s Br. in Supp. of Mot. for Summ. J. (Docket # 20) at 2-3.

11-04651-tjt    Doc 31    Filed 01/27/12    Entered 01/27/12 17:23:47    Page 4 of 19

property of the bankruptcy estate within the meaning of § 541(a)(1).[15] And Defendant argues that "an application of the principle of unjust enrichment would imply an agreement between the [Defendant and Debtor] that, upon entry of the divorce, and upon [Defendant] receiving sole title and ownership to the home, any rights to the line of credit which [Debtor] may have had were terminated."[16]

B. Discussion

Section 541(a) of the Bankruptcy Code defines what is property of a debtor's bankruptcy estate. It provides, in relevant part:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> (2) All interests of the debtor and the debtor's spouse in **community property** as of the commencement of the case that is--
>
> (A) under the sole, equal, or joint management and control of the debtor; or
>
> (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

11 U.S.C. § 541(a) (emphasis added). To determine what Debtor's property rights were in the proceeds of the line of credit on the petition date, if any, the Court must look to Michigan law. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined

---

[15] *See id.*

[16] *Id.* at 5.

by state law.").

> **1. Any property interest that Debtor had in the line of credit or its proceeds was not community property**.

The Court agrees with Defendant that under Michigan law, any property interest that Debtor had in the line of credit or its proceeds was not "community property" within the meaning of § 541(a)(2). "The term 'community property' is not defined in the [Bankruptcy] Code but has been interpreted as a term of art referring only to the means of holding marital property in those states that have adopted a community property system." 5 *Collier on Bankruptcy* ¶ 541.11[1], at 541-61 n.2 (Alan N. Resnick & Henry J. Sommer, ed., 16th ed. rev. 2011)(citing cases); *see also Anderson v. Conine* (*In re Robertson*), 203 F.3d 855, 859 (5th Cir. 2000); *In re Ward*, 837 F.2d 124, 125 n.3 (3d Cir. 1988); *Johnson v. Fisher* (*In re Fisher*), 67 B.R. 666, 668 (Bankr. D. Colo. 1986).

There are eight states that "follow a community property system in characterizing property acquired during marriage: Arizona, California, Idaho, Louisiana, New Mexico, Nevada, Texas, and Washington." M. Read Moore, *Coming Soon to Your State: Community Property*, A.L.I.-A.B.A. Continuing Legal Education Course of Study (2004), *available at* Westlaw at SJ066 ALI-ABA 167, 170. And another two states, Alaska and Wisconsin, have a community property system that residents may opt into or out of. *See id.*; *see also* Thomas A. Jacobs, *Community Property Law*, 4 Ariz. Prac., Community Property Law § 1.2: Acceptance in the United States (3d ed.), *available at* Westlaw at 4 AZPRAC 1.2.

By statute adopted in 1947, Michigan became a "community property" state. But the statute was repealed in 1948, and since that time Michigan has *not* been a "community property"

6

state. *See* 1948 Mich. Pub. Acts, 1st Ex.Sess., No. 39, § 1 (repealing the Michigan Community Property Act, effective May 10, 1948); Former Mich. Comp. Laws Ann. § 557.251 (repealing the Michigan Community Property Act, former Mich. Comp. Laws Ann. §§ 557.201 through 557.220, subject to the saving provisions contained in Mich. Comp. Laws Ann. § 557.252 *et seq.*); *Koebke v. La Buda*, 64 N.W.2d 914, 916 (Mich. 1954)(referring to "P.A. 1948, 1st Ex.Sess., No. 39"as "the repealing act" with regard to "the community property act, P.A.1947, No. 317"); Stephanie Hunter McMahon, *To Save State Residents: States' Use of Community Property for Federal Tax Reduction, 1939-1947*, 27 Law & Hist. Rev. 585, 622-23 (2009)("[o]nce the federal government extended income-splitting to all couples [in the Revenue Act of 1948], those states with newly enacted community property statutes rapidly repealed the provisions, highlighting that the allure of the community property regime had been intimately linked to its tax savings," and that "Michigan led the way, repealing its statute within months of the enactment of the Revenue Act of 1948").

"Generally speaking, in community property jurisdictions, all property acquired by either spouse before marriage, or after separation, and property acquired during marriage by gift, bequest, devise or descent, is separate property, all other property, real or personal acquired by either spouse during the marriage is community property." 5 *Collier* ¶ 541.11[1], at 541-61; *see also In re Field,* 440 B.R. 191, 194 (Bankr. D. Nev. 2009)(footnote and citation omitted) ("Nevada is a community property state, which means that Nevada law presumes that all property not acquired by gift, bequest, or devise belongs to the 'community' created when two people marry."); *C.I.R. v. Chase Manhattan Bank*, 259 F.2d 231, 239 (5th Cir. 1958) (applying Texas law) ("All property accumulated during marriage is community property, unless it is received by

7

gift, devise, or inheritance.").

Under community property law, "each spouse owns one-half of the [community] property [and] each spouse can dispose of only one-half of the couple's community property at death." M. Read Moore, *Coming Soon to Your State: Community Property*, A.L.I.-A.B.A. Continuing Legal Education Course of Study (2004), *available at* Westlaw at SJ066 ALI-ABA 167, 171. "Community property states usually also restrict one spouse's ability to sell or give away community property during lifetime without the other spouse's consent." *Id.* "[C]ommunity property law . . . affects: a. Spousal rights to dispose and manage property during life, at divorce, and at death; b. Creditor rights in property of spouses; and c. Estate, gift, and income taxes." *Id.* at 169-70.

Relying on *In re Brollier*, 165 B.R. 286, 289-90 (Bankr. W.D. Okl. 1994), the Trustee argues that rather than construing "community property" in § 541(a)(2) as a term of art, "community property must be given its common meaning and applied to all cases nationwide, not just those cases arising in the nine states with community-property schemes."[17] *In Brollier*, the court discussed the meaning of "community property" under § 541(a)(2) and § 363(i), and held that the term should accorded its "plain meaning;" namely, "property owned in common by husband and wife, each having an undivided one-half interest by reason of their marital status." 165 B.R. at 290 (citing Black's Law Dictionary 351 (5th ed. 1979)). The Court disagrees with *Brollier*.

Initially, the Court notes two distinctions between *Brollier* and this case: (1) the Chapter 7 debtor in *Brollier* was still married to his non-debtor spouse when he filed his bankruptcy case,

---

[17] Pl.'s Br. in Supp. of Mot. for Summ. J. (Docket # 15) at 4.

8

and no divorce proceedings were pending; and (2) in *Brollier*, "it [was] not disputed that the [property] interest in question [was] property of the bankruptcy estate under § 541." *Brollier*, 165 B.R. at 288.

In addition, the Court finds the reasoning in *Brollier* unpersuasive. *Brollier* relied on the rule that "[w]ords are to be taken in their ordinary meaning **unless they are technical terms or terms of art,**" and then concludes, with very little analysis, that "community property" is not a term of art. *See* 165 B.R. at 289 (citation omitted)(emphasis added). And *Brollier* did not reference or discuss 11 U.S.C. § 101(7), and its legislative history. That section defines the term "community claim" as a "claim that arose before the commencement of the case concerning the debtor **for which property of the kind specified in section 541(a)(2) of this title is liable**, whether or not there is any such property at the time of the commencement of the case." (Emphasis added). The Senate committee report on the meaning of "community claim" under this section, makes clear that "community property" under § 541(a)(2) *is* a term of art. It states, in relevant part: "Paragraph [(7)] defines 'community claim' for those eight states that have community property laws." S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808, 1978 WL 8531, 20.

For these reasons, the Court declines to follow *Brollier*.

2. **On the petition date, Debtor had no legal or equitable interest in the $238,000.00 in cash advances that Defendant had obtained under the line of credit**.

Even though any property interest the Debtor had in the line of credit or its proceeds was not "community property," such interest would still be property of the estate under 11 U.S.C. § 541(a)(1), to the extent Debtor had any legal or equitable interest in it as of the petition date.

9

The Trustee argues that on the petition date, Debtor "had a right to half the money that [Defendant] still held from the advances taken on the line of credit."[18] The Court disagrees.

In 2003, when Debtor and Defendant were still married and they obtained the line of credit from Comerica Bank, Debtor and Defendant *each* obtained the contractual right to make draws on the line of credit up to the limit of $238,000.00, and to use and dispose of the funds advanced as he or she chose. Either Debtor or Defendant could unilaterally exercise his or her right to draw on the line of credit. And both of them would be jointly liable for any debt incurred as a result of any cash advance obtained by either of them. Because the line of credit was secured by a mortgage on the marital home, Comerica Bank had the right, in the event of a default, to foreclose on the mortgage to satisfy any debt incurred on the line of credit by either Defendant or Debtor.

At the time of their divorce in 2004, neither Debtor nor Defendant had exercised his or her right to take any advances on the line of credit, and so there were no proceeds from the line of credit that became part of the marital estate to be divided into separate property of Defendant and Debtor. However, because the Divorce Judgment did not say anything about the line of credit, it is possible that after the divorce, Debtor retained the legal right to make draws on the line of credit, even though it was secured by the home that was awarded to Defendant as her sole property.

After Defendant and Debtor divorced, only Defendant exercised her right to draw on the line of credit, by taking advances up to the contractual limit. Because the parties were divorced, Debtor no longer had any interest in any of Defendant's property, including the $238,000.00 in

---

[18] Pl.'s Br. in Supp. of Mot. for Summ. J. (Docket # 15) at 3.

cash advance proceeds Defendant obtained on the line of credit. Assuming that after the divorce, Debtor still retained the right to make draws on the line of credit, on the date of filing the petition, the only interest Debtor had in the line of credit was *an unexercised right to make a draw on the line of credit up to the contractual limit*. Because the contractual limit had already been reached, however, Debtor's property interest in the line of credit, if any, was effectively worthless on the petition date. Any contractual right(s) of the Debtor under the Comerica Bank line of credit that the Trustee succeeded to, upon the filing of the bankruptcy petition, was worth $0.00. So there is nothing for the Trustee to recover from anyone, based on the line of credit.

>   3. **The Trustee cannot demonstrate the necessary elements of his unjust enrichment theory. The Trustee cannot show that Defendant was unjustly enriched, or that Defendant was enriched *at Debtor's expense*.**

The only common law or equitable theory the Trustee has argued as a basis for recovering half of the cash advance proceeds is, in substance, a theory of unjust enrichment. But this theory fails, because the Trustee cannot establish the required elements of an unjust enrichment claim under Michigan law.

"Unjust enrichment is defined as the unjust retention of money or benefits which in justice and equity belong to another. No person is unjustly enriched unless the retention of the benefit would be unjust." *Tkachik v. Mandeville*, 790 N.W.2d 260, 266 (Mich. 2010) (internal quotation marks and citations omitted).

> Even though no contract may exist between two parties, under the equitable doctrine of unjust enrichment, "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." The remedy is one by which the law sometimes indulges in the fiction of a quasi or constructive contract, with an implied obligation to pay for benefits received to ensure that exact justice is obtained.

11

> The essential elements of a quasi contractual obligation, upon which recovery may be had, are [1] the receipt of a benefit by a defendant from a plaintiff, [2] which benefit it is inequitable that the defendant retain.

*Michigan Educ. Employees Mut. Ins. Co. v. Morris*, 596 N.W.2d 142, 151 (Mich.1999) (internal quotation marks and citations omitted). "The process of imposing a 'contract-in-law' or a quasi contract to prevent unjust enrichment . . . should be approached with some caution." *B & M Die Co. v. Ford Motor Co.*, 421 N.W.2d 620, 622 (Mich. Ct. App. 1988).

The Trustee argues that both of the elements of an unjust enrichment claim are satisfied under the facts of this case. The Trustee argues that Defendant received the following benefit from Debtor: "she used his good name and credit to obtain and maintain a line of credit, which she kept even after they divorced. She then used that line of credit to obtain money for herself."[19] The Trustee then argues that it was unjust for Defendant to retain all of the cash advance proceeds because "[Debtor] has suffered an inequity because he was saddled with a debt, from which he obtained no benefit."[20] The Trustee argues further that because Defendant was unjustly enriched, the Trustee, as the successor to Debtor's rights, is entitled to restitution in the amount of half of the cash advance proceeds.[21]

Arguably, at least, Defendant did receive a sort of benefit *from Debtor*, in being able to draw on the line of credit. But such benefit cannot be measured by the amount of money Defendant was able to borrow (or as one-half of that amount). This is because Defendant paid

---

[19] Pl.'s Reply (Docket # 27) at 5.

[20] *Id.*

[21] *Id.*

her *own* price for this loan — namely, she saddled *herself* with a debt of $238,000, and encumbered *her own* home with a mortgage debt of $238,000.

Whatever the value of any "benefit" Defendant obtained *from Debtor*, however, the Court must reject the Trustee's argument that Defendant's retention of such benefit is unjust. And it is not unjust for Defendant to retain all of the cash advance proceeds. This is so for two reasons: first, because Defendant's draws on the line of credit were secured by property belonging only to the Defendant (her home); and second, because Debtor ultimately suffered no quantifiable injury as a result of Defendant's drawing on the line of credit.

As to the first of these points, the Court agrees with Defendant's argument that:

> an application of the principle of unjust enrichment would imply an agreement between the parties that, upon entry of the divorce, and upon [Defendant] receiving sole title and ownership to the home, any rights to the line of credit which [Debtor] may have had were terminated. To hold otherwise would allow [Debtor] to effectively nullify [Defendant's] property rights in the home by unilaterally drawing on the line of credit and depleting the equity. In the context of this case, requiring the Defendant to pay the Trustee half of the line of credit proceeds would result in a significant payment of Debtor's debts at the expense of Defendant. She would still have the entire mortgage to pay.[22]

The second point above, that Debtor did not suffer any quantifiable injury because of Defendant's draw on the line of credit, is established by the following: First, Comerica Bank never sought recovery from Debtor of any amounts advanced under the line of credit. Second, beginning when Debtor filed his bankruptcy petition, the automatic stay under 11 U.S.C. § 362(a) prevented Comerica Bank from taking any collection action against Debtor. Third, on July 2, 2010, Debtor received a discharge of his debt to Comerica Bank, so the bank can no longer seek

---

[22] *See* Def.'s Br. in Supp. of Mot. for Summ. J. (Docket # 20) at 5.

to collect from Debtor. Fourth, the Trustee cannot establish, and does not argue, that Debtor's liability to Comerica Bank on the line of credit forced Debtor to file bankruptcy. At the hearing on the motions, Trustee's counsel admitted that he could not say that the debt to Comerica Bank precipitated Debtor's bankruptcy filing, because Debtor had substantial other debts. And Debtor's Schedule F supports this point — it shows that Debtor had a total of $487,573.21 in unsecured debt, of which $249,573.21 was unrelated to the Comerica Bank debt.[23]

For these reasons, the Court concludes that the Trustee cannot prevail on his unjust enrichment theory.

### 4. The "hold harmless" provision in the parties' 2004 divorce judgment does not support the Trustee's position.

In the Trustee's reply brief, under a heading labeled, "B. When he filed for bankruptcy, [Debtor] had an equitable right to half the money," the Trustee argues as follows:

> Arguably, the "hold-harmless" language in the [D]ivorce [J]udgment created an express contract or an implied-in-fact contract between [Defendant] and [Debtor]. And to hold [Debtor] harmless, [Defendant] should now turnover half the money. As things stand, however, [Defendant] is not holding [Debtor] harmless. Instead, as she herself points out, this is a classic case of unjust enrichment.[24]

The "hold-harmless" language in the Divorce Judgment that the Trustee refers to is in the section entitled "Property Settlement," and states: "IT IS FURTHER ORDERED that the Defendant shall have the marital home as her sole property and hold Plaintiff [(the Debtor)] harmless for

---

[23] *See* Docket # 13 in Case No. 10-45599.

[24] Docket # 27 at 4-5.

same."[25]

The Court must reject the Trustee's argument. First, it is not at all clear that the "hold harmless" provision of the Divorce Judgment applies to the debt owed to Comerica Bank on the line of credit.

Second, even if this provision could be read to apply to the line of credit debt, it does not logically follow that holding the Debtor "harmless" with respect to such debt requires that Defendant turn over half of the proceeds she obtained from the line of credit. The Trustee fails to explain why this is so, or to cite any authority for such a proposition. Any "harm" Debtor may have suffered is not necessarily equivalent to the amount of money Defendant borrowed.

Third, and most importantly, and as explained above, the Debtor has *not* been harmed by the Defendant's draws on the line of credit. So the "hold harmless" provision does not apply here.

**5. The Trustee's oral request for leave to amend his Complaint must be denied.**

During the hearing on the summary judgment motions, the Trustee requested that if the Court rules against him on his legal theories pled so far, the Court grant him leave to amend his complaint. If the Court rules that the cash advance proceeds are not property of the bankruptcy estate, the Trustee wants an opportunity to allege any cause of action under Michigan law that Debtor may have had against Defendant on the petition date. The Trustee argues that, as successor in interest to the rights and interests of Debtor, he may have unspecified claims under Michigan law for the harm Debtor suffered from Defendant's drawing on the line of credit.

The Court has now ruled that no part of the cash advance proceeds are property of the

---

[25] Divorce Judgment (Ex. 1 of Compl.) at 4.

bankruptcy estate. But the Defendant opposes the Trustee's request for leave to amend his complaint, arguing that it is untimely, and also arguing, at least implicitly, that any amendment would be futile. The Court concludes that the Trustee's delay in making his request has not prejudiced the Defendant in a way that would justify denying leave to amend. But the Court will deny the Trustee's request, because amendment would be futile.

Under Fed.R.Civ.P. 15(a)(2), which applies in this adversary proceeding under Fed.R.Bankr.P. 7015, "[t]he court should freely give leave [to amend a pleading] when justice so requires." The court in *United States v. Vehicle 2007 Mack 600 Dump Truck*, 680 F. Supp. 2d 816, 826-27 (E.D. Mich. 2010) described the factors that courts consider in deciding whether to grant leave to amend a pleading:

> Granting or denying leave to amend a pleading is within the trial court's discretion. *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). A party seeking to amend an answer "must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake,* 49 F.3d 1197, 1202 (6th Cir.1995). A court may deny leave to amend when a party unnecessarily delayed in seeking amendment, thereby causing prejudice to the other party or unduly delaying the litigation. *Phelps v. McClellan,* 30 F.3d 658, 662–63 (6th Cir. 1994) (citation omitted). "In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* However, delay alone is insufficient to deny the proposed amendment. *Robinson v. Michigan Consol. Gas Co. Inc.,* 918 F.2d 579, 581 (6th Cir.1990)(citations omitted). Finally, although liberal, it is well established that justice does not require the Court to grant leave to amend a pleading if to do so would be futile. *See In re Ford Motor Co. Securities Litigation, Class Action,* 381 F.3d 563, 574 (6th Cir.2004).

16

### a. Undue delay

The following background is relevant to the timeliness of the Trustee's oral request for leave to amend his complaint. The Trustee filed this adversary proceeding on February 3, 2011. The Court entered a scheduling order on March 28, 2011. In that order, the Court adopted the parties' agreement regarding amendment of the pleadings — namely, that each party could amend his/her pleading without further Court order, until May 15, 2011. After that date, any amendments would require consent of the opposing party, or Court approval.[26] The Court's scheduling order also set deadlines of July 31, 2011 for the parties to complete all discovery, and August 15, 2011 for the parties to file any potentially dispositive motions. The order scheduled a trial date of September 6, 2011.

After the Trustee filed his summary judgment motion on August 15, 2011, the Court held a status conference on August 22, 2011, and issued a further scheduling order. That order did not change any of the pretrial deadlines, except that it granted the Defendant leave to file her own summary judgment motion by August 22, 2011, one week after the original deadline for dispositive motions.[27] The order also set a briefing and hearing schedule for the summary judgment motions, and adjourned the final pretrial conference and trial dates to accommodate that schedule.

It was not until the October 5, 2011 hearing on the summary judgment motions that the Trustee first made his oral, conditional request for leave to amend his complaint. And the

---

[26] *See* Adversary Proceeding Scheduling Order (Docket # 7) at 1, Section I; Report of Parties' Rule 26(f) Conference (Docket # 6) at 2.

[27] Further Scheduling Order (Docket # 17).
17

11-04651-tjt    Doc 31    Filed 01/27/12    Entered 01/27/12 17:23:47    Page 17 of 19

Trustee's oral request was not accompanied by any proposed amended complaint. Nor did the Trustee describe any particular claim or legal theory that he wanted to add by amendment, if the Court ruled against him on his property-of-the-estate theories.

Arguably, the Trustee's delay in seeking leave to amend his complaint was unnecessary delay, but such delay has not caused the Defendant to suffer prejudice of the any of the types described in *United States v. Vehicle 2007 Mack 600 Dump Truck*, quoted above. That is, the Court cannot say that: "the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." 680 F. Supp. 2d at 827 (citation omitted). And "delay alone is insufficient to deny the proposed amendment." *Id.* So the Court will not deny leave to amend on the ground of undue delay.

**b. Futility**

"[I]t is well established that justice does not require the Court to grant leave to amend a pleading if to do so would be futile." *United States v. Vehicle 2007 Mack 600 Dump Truck*, 680 F. Supp. 2d at 827 (citation omitted). In making his conditional, oral request for leave to amend his complaint, the Trustee has not identified any particular claim that he would add against Defendant. And for reasons discussed in this opinion, none of the legal theories that the Trustee has pled or argued so far (either in writing or in the summary judgment motion hearing) would support any meritorious cause of action against Defendant. As a result, the Court concludes that amendment would be futile. The Court will deny the Trustee's request for leave to amend for this reason.

18

## IV. Conclusion

For the reasons stated in this opinion, the Court will enter an order granting Defendant's motion for summary judgment; denying the Trustee's motion for summary judgment; and denying the Trustee's oral motion for leave to amend his complaint.

**Signed on January 27, 2012**                  **/s/ Thomas J. Tucker**
                                                                                           **Thomas J. Tucker**
                                                                                          **United States Bankruptcy Judge**